The opinion of the court was delivered by
Miller, J.
The plaintiff, the police jury of Lafourche, sought by this suit to enjoin the police jury of Terrebonne from collecting licenses of oyster fishermen pursuing their vocation within the limits of Lafourche, because east of a boundary claimed to be established as that of the parishes of Lafourche and Terrebonne by the judgment of this court, and the petition also claimed judgment for the amount of such licenses alleged to have been collected by the parish of Terrebonne. There was the exception of prematurity, which being overruled the defendant answered, insisting that the boundary of Lafourche and Terrebonne was not that relied on by plaintiff, controverting the interpretation of plaintiff of the judgment of this *1300 ■court in regard to the boundary of the parishes, claiming that the territory in respect to which the plaintiff asserted jurisdiction was within that of the defendant, the parish of Terrebonne, and the answer denied liability for the licenses collected. From the judgment ■of the lower court, maintaining the boundary asserted by Lafourche, ■enjoin'ng license collections by the authorities of Terrebonne east of that boundary within the limits of Laf urehe, and denying relief for the licenses claimed to have been illegally collected by the Terrebonne authorities, the defendant appeals.
The defendant, the parish of Terrebonne, strenuously insists that the territory within which Lafourche asserts jurisdiction is within the limits of Terrebonne. These parishes have had a previous contention on this subject reported in 34 An. 1230, Parish of Lafourche vs. Parish of Terrebonne. Created in 1822, the lines of Terrebonne were attempted to be adjusted in 1850 by the Act No. 97 of that year. The decision in 34 An. seems to have been ineffective for ending contention, and after fifteen 3 ears since its rendition the two parishes now confront each other on this boundary question, revived owing to their conflicting pretensions to collect the oyster bed revenues under the legislation of 1892. The contention is now confined to the lower portion of the eastern boundary of Terrebonne, Which is thus defined in the acts: from the middle of the line drawn from the lower boundary of Ballot’s plantation to the-lower side of Lacoupe of Bayou Bceuf, thence on a line parallel with the Lafourche to within eighty arpents of the Bayou Terrebonne, thence winding around the settlement of the bayou to a distance of forty arpents from Bayou Lafourche, to be continued until a distance of eighty arpents from the Lafourche can be effected without encountering the limits of the lands on the Terrebonne; thence still at a distance of eighty arpents from the Lafourche, on a line parallel with that bayou to the Bayou Blue Water, the right bank of which to the sea shall be the eastern boundary. In the previous litigation one contention was as to the winding line, and the court determined it continued until a point eighty arpents from the Lafourche can be reached without encountering the lands on the Terrebonne. 84 An. 1232, 1234. The decision, it is claimed, is res judicata of the present controversy as to the bayou, with which the eightyarpent line connects. The discussion in that case, in part directed to the extent of the winding line, when the opinion *1301 came to deal with the prolongation of that line it was made to connect with the Bayou Chene. That connection, we think, is. demonstrated to be impossible. The Chene is not mentioned in either legislative act of 1812 or 1850, which of course were to be the guides of the court. The court observed that extracts, from the American State papers of confirmations of lands on the Bayou Blue Water led to the conclusion that the Chene was the eastern boundary. The conclusion of the court in its opinion is at variance with the statutory boundary and irreconcilable with the line to be drawn and the location of the Chene. The previous decision determining the end of the winding line, nothing remained but the extension of that line parallel with the Lafourche and eighty arpenta from it, until the Blue Water was reached. Yet the court, in its opinion, assumes that Bayou Chene was to be reached by the prolonged line. The testimony and the maps show that the prolonged line strikes the Blue Water and not the Chene. Bayou Blue or Bleu extends from the west of the parish until it loses itself near the Lafourche on the east, but before reaching the Lafourche the Blue-unites itself with the Bayou Blue Water, which pursues its way to. the sea. The eighty-arpent line begins above both bayous, and must strike the Bayou Blue Water, or, as the testimony shows, does, strike the point where that bayou unites with the Blue. Bayou Chene or Du Ohien is south of Bayou Blue, west of the Blue Water, pursues its course to the sea beyond the reach of any line parallel with the Lafourche in all of its course east of Bayou Blue, and. still further east of the Chene. The Chene and the Blue Water are totally distinct and not connected. From the earliest and all times, they have been distinguished. No one could find the Bayou Blue-Water, otherwise called the Chene, mentioned in the opinion, but each are well known. Bayou Blue Water coincides with the extension of the eighty-arpent line called for by the legislative acts, and gives, the parish a definite boundary. ' Bayou Du Ohien practically gives the parish no boundary, because disconnected with that line. If, therefore, the reasoning of the court, in reference to Bayou Ohien, leads, to an impossible result, if that expression may be permitted, it seems, to us it must be discarded.
The reasoning forms no part of the decree. Pepper vs. Dunlap, 5 An. 200; Keane vs. Fisher, 10 An. 261. It may be claimed that the reasoning and the decree coincide. The decree is that Bayou. *1302 Blue Water, otherwise called the Du Ohene, following its course to the sea is the boundary. The decree contemplates one continuous bayou coinciding with the eighty-arpent line. It can not apply to the Du Ohene, because it is not and can not be connected with the ■eighty-arpent line, nor part of or connected, in any way, with the Bayou Blue Water. Besides, Blue Water is not and never was known as Bayou Du Ohene. Construing this decree as requiring one continuous bayou extending to the sea, connected with the eightyarpent line, called the Bayou Blue Water, we must hold that to be the boundary, and disregard the additional name the court applies by the expression “ otherwise called Du Chien,” entirely distinct from the Bayou Blue Water and utterly repugnant to the boundary, In other respects fixed by the decree itself.
It is therefore ordered, adjudged and decreed that the judgment •of the lower court be avoided and reversed, and it is now adjudged and decreed that from the point where the line winding round the settlements on Bayou Terrebonne reaches a distance of eighty arpents from the Bayou Lafourche without encountering the limits of the land on the Terrebonne, fixed in the decree of this court in the suit of these parties, rendered on the tenth day of Apiil, 1882, that the eastern boundary of the parish of Terrebonne is hereby decreed to be a line parallel with the Bayou Lafourche, still, at a distance of eighty arpents from it to the Bayou Blue Water, following its right bank to the sea, and that the oyster beds west of that line be decreed to be part of said pnrish of Terrebonne, and that the decree of the lower court, in respect to the money demand of the parish of Lafourche, be affirmed, the plaintiff, appellee, to pay costs.