(38 South. 273.)

No. 15,511.

## PARISH OF CADDO v. PARISH OF DE SOTO.*

(Feb. 27, 1905.)

PARISHES — BOUNDARIES—VENUE OF ACTION—PROCEDURE.

1. The fixing of parish boundary lines is a legislative function; but where the Legislature has passed a statute for that purpose, and a dispute arises between two parishes as to which of two lines the statute has intended to adopt, the matter involved is the interpretation of a statute—a clearly judicial function—and the courts have jurisdiction of the controversy.

2. Boundary actions do not come under the rule according to which a defendant must be sued in the court of his domicile, but are required to be brought in the court within whose jurisdiction the property sought to be bounded is situated; hence a suit in boundary between two parishes may be brought in either parish, and the plaintiff parish may institute the suit in the court of her own domicile.

3. The Legislature having prescribed a mode of proceeding for the fixing of uncertain parish lines, that mode must be followed and exhausted before recourse can be had to the courts.

(Syllabus by the Court.)

Appeal from First Judicial District Court, Parish of Caddo; Thomas Fletcher Bell, Judge.

Action by the parish of Caddo against the parish of De Soto. Judgment for defendant, and plaintiff appeals. Judgment set aside, and suit dismissed, at plaintiff's costs.

Edgar Williamson Sutherlin, Charles Wheaton Elam, and James Wilson Parsons, for appellant. Gaines & Looney and Henry Hunsicker, for appellee.

PROVOSTY, J. The parish of Caddo brings this suit to fix her southern boundary line where she adjoins the defendant parish of De Soto. She has brought the suit in the court of her own domicile. Defendant excepted to the jurisdiction of the court both ratione materiæ and ratione personæ; con-

---

*Rehearing denied March 27, 1905.

tending on the first exception that the fixing of the boundary lines of the political subdivisions of the state appertains exclusively to the legislative department, and on the second exception that a defendant must be sued at his domicile. Defendant also pleaded no cause of action; contending that, the Legislature having prescribed a mode of fixing parochial boundary lines, that mode is exclusive, or, at any rate, it is the primary remedy, which must have been exhausted before recourse can be had to the courts.

There can be no doubt that the dividing of the state into parishes, with proper delimitation of their territory, is not a judicial function, but nothing of that kind is proposed to be done in this case. The line has already been fixed, and it has been located either as contended by plaintiff or as contended by defendant, and the question is which of these two lines the statute intended to adopt. The matter involved is the interpretation of the statute, and assuredly the interpretation of statutes is a judicial and not a legislative function.

The fact is that if the Legislature interposed in this matter, and, in deciding between the two lines, happened to choose the wrong one, its action would amount to the changing of a parish line, and would be unconstitutional, because, by article 278 of the Constitution, the Legislature is without authority to change parish lines, except with the consent of two-thirds of the electors of the parishes to be affected thereby. Therefore, if the Legislature undertook to decide the present controversy, of its own authority, and without consultation of the electors of the litigant parishes, it would find itself in the awkward position of having to decide right, under penalty of its action being unconstitutional.

In the case of Lafourche v. Terrebonne, 34 La. Ann. 1230, this court entertained jurisdiction of such a suit. True, no plea to the jurisdiction was interposed in that case, but the court would have been bound to notice the want of jurisdiction ex mero motu; and, in the three times the case came before the court, such want of jurisdiction would assuredly have suggested itself to the court if it had existed. 48 La. Ann. 1299, 20 South. 708; 49 La. Ann. 1331, 22 South. 376.

A controversy between two states over their boundary line is held to involve a judicial, and not a political, question, and to fall within the delegation of power to the Supreme Court of the United States "to determine controversies between two states." Aliter as to controversies of the same kind between sovereign nations, neither of which is bound to submit to the jurisdiction of the courts of the other. U. S. v. Texas, 143 U. S. 621, 12 Sup. Ct. 488, 36 L. Ed. 285.

The plea to the jurisdiction ratione personæ is without merit. The general rule is that a defendant must be sued in the court of his domicile, but, contrary to this rule, the actions of boundary and revendication of real estate are required to be brought before the court within whose jurisdiction the land to be bounded or revendicated is situated. Civ. Code, art. 840 (Code Prac. art. 163). The present suit is one in boundary, and, inasmuch as it involves territory which both parties are claiming, it is also an action in revendication. Cross on Pleading, § 264.

The case is peculiar, in that the land between which the boundary line is sought to be established is not situated wholly in one parish, but in two parishes—in fact, embraces the entire territory of the parishes; but it is not for that reason different from what it would be if the two parishes were two estates situated in the two parishes, respectively, with the disputed line between them. We hardly think any one would say that the suit to fix the boundary line between two estates so situated might not be brought in either parish.

The test of the jurisdiction ratione materiæ in a boundary suit being the value of

the space lying between the disputed lines (Levet v. Lapeyrollerie, 38 La. Ann. 264; Salles v. Jacquet, 108 La. 107, 32 South. 411), it would seem as if the situs of this same space might likewise be the test of the jurisdiction ratione personæ. If so, it would seem that a suit to determine whether this disputed space is in the one parish or in the other might be brought in either parish. It would seem, also, that, by bringing her suit in the court of the rival parish, plaintiff would have, to some extent, admitted that the disputed territory is situated in the rival parish.

The exception of no cause of action is more serious. Act No. 40 of 1855, p. 35, is entitled "An act to provide for ascertaining the boundaries of parishes." Said act is now section 2624 of the Revised Statutes of 1870, and is in full force. It prescribes the course to be pursued by police juries for "ascertaining and fixing" the boundaries between their parishes and adjoining parishes. We must hold that the mode of proceeding thus enjoined upon the police juries is exclusive, at least to the extent that it must first be resorted to and be exhausted as a remedy before they can apply to the courts; that the having had recourse to it is a condition precedent to applying to the courts.

We find no authority in this court to declare in advance that the surveyors will fail in the work enjoined upon them by this statute. They will have for their guidance the same rules precisely which this court would have to invoke if it now undertook to decide between the two lines in dispute. Whether, in case they agree, there would be an appeal from their decision, is a question not presented for decision. In case they disagree, and each runs his line according to his own interpretation of the statute, the parties will then have exhausted the primary remedy prescribed by the statute, and the case will be ripe for the interposition of the courts.

This objection to the prematurity of the suit was not urged in the case of Lafourche v. Terrebonne, and there the court could not have supplied it ex mero motu.

The judgment is set aside and the suit dismissed as in case of nonsuit; plaintiff to pay costs of both courts.