## NEVILL v. PARISH DEMOCRATIC EXECUTIVE COMMITTEE FOR THE PARISH OF ORLEANS, LA., ET AL.

(November 28, 1927. Opinion and Decree.)

*(Syllabus by the Court)*

1. **Louisiana Digest—Elections by the People—Par. 28.**
Under Act 97 of 1922 candidates for district offices have twenty days from the day the Parish Executive Committee meets and issues its call for a primary in which to file a notice of their intention to become candidates in the Democratic Primary so ordered.

2. **Louisiana Digest—Elections by the People—Par. 42.**
The fact that the Parish Committee, by resolution, makes a mistake, and extends the time for filing such notices by one day, can make no difference since the law and not the committee fixes the time for filing of notices at twenty days from the issuance of the call.

3. **Louisiana Digest—Elections by the People—Par. 28, 42.**
The fact that the Parish Committee were influenced by what they termed the serious character of candidates in rejecting some and accepting others, similarly situated, can not affect the action of the committee if its conclusion was correct, whatever may be said of its reasons.

4. **Louisiana Digest—Appeal—Par. 569, 571.**
The judgments appealed from, not the reasons therefor, determine the action of an appellate court in reviewing the proceedings below.

Appeal from Civil District Court, Division "D". Hon. Walter L. Gleason, Judge.

Action by Robert W. Nevill against Parish Democratic Executive Committee for the Parish of Orleans, La., et al.

There was judgment for defendant and plaintiff appealed.

Judgment affirmed.

H. M. Wilkinson, of New Orleans, attorney for plaintiff, appellant.

J. A. Grasser, E. Rightor, Chas. J. Rivet, of New Orleans, attorneys for defendant, appellee.

ON THE MERITS

WESTERFIELD, J. Robert W. Nevill filed written notice of his intention to become a candidate for the State Senate with the Orleans Parish Democratic Committee for the Parish of Orleans, hereinafter called the Parish Committee, on October 28th, 1927.

Four days thereafter, John F. Brennan, a candidate from the same senatorial district, filed a written protest upon the ground that Nevill's notice of intention was filed one day too late.

On Thursday, November 3rd, 1927, the Parish Committee met and considered the

Brennan protest together with a number of others whose candidacies had been opposed upon the same ground. After a trial during which there was reference by some of the committeemen to serious candidates, implying that some were serious and others frivolous, the Parish Committee maintained the Brennan protest and refused to certify Neville's name as a candidate to the Secretary of State as required by law, though, in at least one other instance a candidate against whom a similar protest had been made was certified and the protest against his candidacy overruled.

Nevill appealed to the District Court, which refused to interfere with the ruling of the Parish Committee, and from that judgment he appeals to this court.

The Primary Law, Act 97 of 1922, provides that the State Central Committee "of the political parties coming within the provisions of this act shall, on the first Tuesday of October next preceding the date of the next general state election * * * meet and issue a call for a primary election," etc. Pursuant to that requirement the State Central Committee of the Democratic Party met October 4th, 1927, and issued its call for a primary election January 17th, 1928. Sec. 4 of the law declares that "within twenty days after the issuance of said call by the State Central Committee * * * the respective district and parochial committees shall meet and order that all nominations for district, parochial and ward offices" shall be made by direct primary held on the same day as the General State Election. Accordingly, the Parish Committee for the Parish of Orleans met October 7th, 1927, and adopted the following resolution:

"BE IT FURTHER RESOLVED, that any person desiring to become a candidate for the State Senate shall file his written notification in form prescribed by law with chairman of this committee, on or before 12:00 o'clock midnight, October 28, 1927, and shall accompany said notification with a deposit as required by law in the sum of Five Dollars ($5.00)."

Section 13 of the Primary Law provides that candidates for state and district offices "shall" within twenty days (ten days for parochial offices) "after the issuance of the call of said committee" file written notice of their intention to become a candidate with "the respective officers hereinafter designated", which in this case was the chairman of the Parish Committee. See Sec. 14.

The law therefore requires that the notice of candidacy must be filed within twenty days of the meeting of the committee. In the case of State Central Committee the date on which it meets is fixed by law as the first Tuesday of October and in the case of the Parish Committee within twenty days thereafter. But, it is argued, the Parish Committee in its call declared that candidates would have until midnight October 28th, 1927, and thus mislead the complainant, who had a right to rely upon the interpretation given the law by public officers charged with its execution.

It is also contended that the record indicates the decision of the Parish Committee to have been based upon their opinion of the serious and frivolous character of the candidates, an issue not raised by the objector, and not pertinent, nor tenable. Besides, by admitting one and rejecting others in the same predicament a manifest inequity results.

Practically every contention made in the instant case was urged in the case of Dunshie vs. Harvey Fields, Chairman, etc., No. 27975 S. C., decided November 21st, 1927. In the Dunshie case, a mistake was made by the State Central Committee of

one day in fixing the last day for the filing of notices of intention to become candidates. Dunshie, as well as others, relied upon that action of the committee and attempted to qualify the last day. Protests were filed which the committee overruled in some cases but upheld as against Dunshie. The same equitable considerations were urged, as are so ably and strenuously presented here, but the court held that Dunshie was too late because the law and not the committee fixed the date upon which he must qualify.

The two cases are very similar. In the instant case the Parish and not the State Central Committee issued the call for the election. This fact, it is contended, differentiates the cases, because the State Central Committee is required to meet on a fixed date (first Tuesday in October) and issue its call, whereas the Parish Committee may meet at any time within twenty days after the State Committee meets. This difference, it is argued, gives the Parish Committee more discretion than the State Committee, since it may meet any day of twenty, whereas, the State Committee only on one day. It is apparent, however, that the discretion, when exercised, is exhausted. The Parish Committee could not meet as it did on November 7th and again on the 10th or 12th and thus extend the time for candidates to qualify. It could meet any day of the twenty but not every day. The law did not contemplate that intending candidates should keep a constant vigil for fear the local committee should change the dates. It was clearly intended that once the meeting was held candidates could rely upon the ten or twenty days fixed by the law to begin to run from that time.

We can not find any difference in principle between this case and the Dunshie case.

It is true that in the Dunshie case there was no discussion of serious or frivolous candidates as influencing the decision of the committee, the committee simply and arbitrarily separated the sheep from the goats. It must be conceded that in the instant case there was much said to that effect in the discussions of the committee, perhaps this consideration controlled the majority view.

We find the following admission in the record:

"That he, George Montgomery, who is a member of this bar as well as a member of the Parish Democratic Committee, had in mind going into the seriousness of a candidate that the committee had no doubt, but that their applications had been filed beyond the legal delay, but that, if the committee were satisfied with the seriousness of the candidacy of Nevill, it might extend its generosity by holding him qualified, in which situation there would have been no appeal from the decision of the committee."

It can not be doubted that the committee was largely influenced by such consideration, but the most that can be said is that they were wrong. Their reasons were not sound. But if their judgment was correct the fact that their reasons were not is immaterial. A bad judgment can not be supported by good reasons but a good judgment is not vitiated by bad reasons. Seyburn vs. Deyris, 25 La. Ann. 483; Police Jury of Lafourche vs. Police Jury of Terrebonne, 48 La. Ann. 1299, 20 So. 708. The formal protest against Nevill was based upon the tardiness of his notice of intention to become a candidate.

All other points raised we consider sufficiently answered by the Dunshie case.

The judgment appealed from is affirmed.