NORRIS, Judge.
This is an appeal from a judgment of civil commitment. The respondent below, L.M.S., was placed in Humana Hospital Brentwood by means of an emergency certificate on February 28,1985. The petitioners, L.M.S.’s daughters, filed a petition for formal commitment on March 12. The trial court appointed a psychiatrist to examine L.M.S.; L.M.S. also moved for and obtained a psychiatric expert. At the hearing on the rule, the trial court heard the testimony of the two experts, of L.M.S.’s daughter (Mrs. P.), and of L.M.S. The trial court found probable cause that L.M.S. was mentally ill or gravely disabled and ordered her committed to Humana Hospital Brentwood. L.M.S. has appealed, urging two specifications of error:
(1) The trial court applied the wrong standard of proof for a judgment of civil commitment; and
(2) The trial court did not order the least restrictive treatment possible.
Because we find that the evidence did not prove the case by a clear and convincing standard, we reverse and remand.
FACTS
L.M.S. is an apparently elderly lady[1] with a bad case of arthritis. She lives in rural Sarepta but her daughter, Mrs. P., lives only a few hundred yards away.[2] One day in February she telephoned Mrs. P. and asked her to help her pack. L.M.S. said she had become engaged to a mass media preacher in Atlanta, Georgia, who was about to come and take her to his home. She said she was able to communicate with him telepathieally, without a telephone. She led Mrs. P. and her family around the house, showing them which of her belongings they could keep when she left. Mrs. P. and the other daughter, Mrs. H.,' had her admitted and detained at a treatment facility pursuant to LSA-R.S. 28:53 that night.
In addition to the delusion of marriage, L.M.S. complained that people were stealing from her, or borrowing things without her permission. But aside from these “delusions,” [3] her problems seemed to be mainly physical. She suffers from severe arthritis and must use a cane or a walker to get around. She takes a large number of pills, but they are mostly vitamins, minerals, and over-the-counter analgesics. Mrs. P. complained that L.M.S. was “hard to please”; L.M.S.’s own testimony shows that she is strong-willed and independent, and doubtless dislikes the idea of commitment. She definitely wants to continue living at her home of many years.
*936 Dr. Schober, the court-appointed expert, testified that L.M.S. suffered from a longstanding paranoid disorder that had gradually worsened in the past two or three years. Between the time of her emergency commitment and the court hearing, L.M.S. had definitely improved. She was well oriented, sentient, and able to remember things; she also laughed off the story of the alleged engagement. Dr. Schober feared, however, that L.M.S. was a “high grade” paranoid, one who could cover her tracks and deceive her observers. Thus he could not say she was “demonstrably mentally ill” but his clinical diagnosis was such and he felt that for the best interest of L.M.S., her family, society and the community, she needed the structured care an institution could provide. He considered whether L.M.S.’s needs could be met by a regimen of at-home care, including regular visits by Meals on Wheels, Upjohn, and Mrs. P. He seemed to conclude that this program might be acceptable but it would definitely be his second choice.
Dr. Arreteig, L.M.S.’s court-appointed expert, agreed with Dr. Schober’s diagnosis of high-grade paranoia. She thought, however, that L.M.S.’s condition was not serious enough to justify commitment. She noted that the delusions had abated during the two weeks of emergency commitment; even at their worst, they were pleasant and not harmful. She thought the at-home plan would be medically suitable, and expressed concern that forcing L.M.S. into a nursing home might have adverse effects. She could not predict whether L.M.S. would relapse on leaving Humana.
DISCUSSION
In order to subject a respondent to a judgment of civil commitment, the petitioners must show, by clear and convincing proof, that the respondent is dangerous to himself or to others or is gravely disabled, as a result of substance abuse or mental illness. LSA-R.S. 28:55 E; Addington v. Texas, 441 U.S. 418, 99 S.Ct. 1804, 60 L.Ed.2d 323 (1979). In the instant case, there is no real allegation that L.M.S. is a substance abuser. There is likewise no allegation that she is dangerous to herself or others, and the trial court made this specific finding. R; p. 81. Thus our question is limited to whether the evidence clearly and convincingly shows that L.M.S. is gravely disabled as a result of mental illness.
From his oral reasons in support of judgment, it is obvious that the trial court thought it was presiding at a probable cause hearing rather than a judicial commitment hearing. Applying the probable cause burden of proof, the lower court concluded that L.M.S. was gravely disabled “within the meaning of the statute at this time.” This is not the correct burden of proof. However, appeal is from the trial court’s judgment, not its reasons for judgment. LSA-C.C.P. art. 2082; Nevill v. Parish Democratic Committee, 7 La.App. 286 (Orl.Cir.1927).[4] Accordingly, we consider whether the evidence adduced proves the point by a clear and convincing standard, regardless of the trial court’s misstatement of the law.
The court must first find that the respondent is gravely disabled. A gravely disabled person is one who is “unable to provide for his own basic physical needs, such as essential food, clothing, medical care and shelter.” LSA-R.S. 28:2(10). The evidence here was fairly close. Before her commitment, L.M.S. was relying heavily on the support services of agencies such as Upjohn and Meals on Wheels. She also relied on her daughter, Mrs. P., who checked in on her at least once a day. These circumstances would support a finding of grave disability. On the other hand, it was uncontested that L.M.S. is ambulatory with the help of a walker. She attended church. No one asserted that her daily physical needs go unanswered. There was also evidence to suggest that she hired local youths to cut her grass and to do household chores. These circumstances *937 support a finding that L.M.S.’s disability, though pronounced, is not grave. Taken as a whole, this evidence does not clearly and convincingly prove that respondent is gravely disabled.
The court must next find that respondent’s grave disability results from mental illness. The statute does not define mental illness, but it defines a mentally ill person as “any person with a psychiatric disorder which has substantial adverse effect on his ability to function and who requires care and treatment.” LSA-R.S. 28:2(14). Both experts agreed that L.M.S. suffered from paranoia, a psychiatric disorder. But the degree of the adverse effect was questioned. Dr. Schober found a “substantial likelihood” that the paranoia would affect her ability to function outside the hospital. He admitted, however, that the delusions were not harmful and that L.M.S. was not violent. Dr. Arreteig was impressed that L.M.S. had apparently dispelled the delusions and returned to a fairly normal state without the help of drugs. Dr. Arreteig’s testimony on this score was rather general and conclusive. Finally, on the issue of care and treatment, the experts were very contradictory. Dr. Arre-teig definitely thought institutional care was unnecessary; Dr. Schober thought differently, but he occasionally wavered toward at-home care. Neither doctor testified that respondent was gravely disabled as a result of her mental illness. The evidence strongly suggests that L.M.S.’s described disability results rather from her arthritic condition. Taken as a whole, this evidence does not clearly and convincingly prove that L.M.S.’s disability results from mental illness that substantially affects her ability to function and requires care and treatment.
The trial court’s conclusions, based on a live presentation of testimony and a personal observation of the respondent, are entitled to great weight. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978); In the matter of the commitment of VA, 463 So.2d 998 (La.App.3d Cir.1985). We find, however, that the evidence presented here is not adequate to meet the clear and convincing standard that is both statutorily and constitutionally required. LSA-R.S. 28:55; Addington v. Texas, supra. By “clear and convincing” evidence we mean a standard more than a “preponderance” but less than “beyond a reasonable doubt.” Under this standard, the existence of the disputed fact must be highly probable, or much more probable than not. Louisiana State Bar Ass’n v. Edwins, 329 So.2d 437 (La.1976). This high standard of proof is mandated in cases “when there is thought to be special danger of deception, or where the court considers that the particular type of claim should be disfavored on policy grounds.” McCormick On Evidence, § 340(b), p. 798 (2d ed. 1972); Succ. of Lyons, 452 So.2d 1161 (La.1984).
Here, the record strongly indicates the trial court applied the wrong standard of proof to the equivocal evidence presented. Thus the judgment is legally erroneous. LSA-Const. art. 5 § 10. When the evidence falls short of the prescribed burden of proof, we must reverse and remand. In the matter of the commitment of Scott, 438 So.2d 728 (La.App.2d Cir.1983).
We note that the respondent filed a motion for new trial, alleging the trial court applied the wrong standard of proof. The trial court denied this motion after argument some twelve days after the hearing.[5] We are reluctant to conclude, as ap-pellees urge, that this subsequent ruling can effect a retroactive cure of the earlier judgment. It does not appear that the trial court actually reconsidered the evidence; thus the subsequent ruling cannot command as much weight as an initial judgment fashioned by applying the correct standard of proof. Our primary concern is to honor the constitutional rights outlined *938 in Addington, supra, and the procedural safeguards created by our statute. Where the right of an elderly citizen to live in her own home is questioned, we will strictly require that the record establish by clear and convincing proof that the respondent is gravely disabled as a result of mental illness. This record fails to do so, especially in light of the erroneous standard initially applied by the trial court.
In her second specification of error, L.M.S. contends the treatment ordered was not “least restrictive” of her liberty. LSA-R.S. 28:55 E; O’Connor v. Donaldson, 422 U.S. 563, 95 S.Ct. 2486, 45 L.Ed.2d 396 (1975). This issue is integrally related to the first because even on a showing of clear and convincing evidence, the court may only order commitment “to a designated treatment facility which is medically suitable and least restrictive of his liberty.” Appellees urge that a strict reading of this provision mandates commitment to a treatment facility, thus excluding the possibility of at-home care, which would obviously be “least restrictive.” This is not correct. In O’Connor v. Donaldson, supra, the supreme court said:
In short, a State cannot constitutionally confine without more a nondangerous individual who is capable of surviving safely in freedom by himself or with the help of willing and responsible family members or friends. Since the jury found, upon ample evidence, that O’Con-nor, as an agent of the State, knowingly did so confine Donaldson, it properly concluded that O’Connor violated Donaldson’s constitutional right to freedom. 422 U.S. at 576, 95 S.Ct. at 2494.
Thus, if medically suitable treatment may be secured without institutionalization, then the court is not prohibited by statute from ordering such treatment.
Accordingly, we remand this case for the holding of another judicial hearing with additional up-to-date evidence that may show, under a proper standard of proof, that L.M.S. is commitable under the statute. See Scott, supra. If she is commita-ble, then the court will fashion an appropriate order consistent with this opinion. If she is not, she should be released and ap-pellees are free to consider other appropriate remedies.
REVERSED AND REMANDED.

. The record before us does not establish L.M. S.’s age.

. The venue for a petition of judicial commitment is the judicial district where the respondent is confined. LSA-R.S. 28:54 A. Thus this suit was brought in Caddo Parish rather than Webster, L.M.S.'s domicile.

.L.M.S.’s daughter thought the stories of theft were also delusions. Nevertheless, L.M.S. insisted on the stand that her medication, her wedding rings, lawn mower and tiller had all been stolen; she also testified that local boys would go joyriding at night in her car.

. "The judgments appealed from, not the reasons therefor, determine the action of an appellate court in reviewing the proceedings below.” Nevill, supra.

. The parties allege in their briefs that the trial court applied the clear and convincing standard at this hearing. The record, however, does not contain a transcript of the hearing and so we can rely only on the minute notation that reads, "Apr. 8, 1985 Motion for New Trial filed by defendant, argued, submitted and overruled. (Judge Hamilton).”