STEWART, J.
hln this juvenile court proceeding, the defendant-appellant, Eric Christopher Smith (“Smith”), is appealing a judgment rendered in favor of plaintiff-appellee, Keri Anne Richardson (“Richardson”). Because we find that Richardson did not prove the case by a preponderance of the evidence, we reverse.
FACTS
Richardson and Smith are the parents of I.G.S.,[1] and the record does not reflect that the couple ever married. Richardson married her current husband, Joshua Bryan Nichols, on August 14, 2010. Nichols was approximately 22 years old, while Richardson was approximately 38 years old, at the time of these proceedings.
On February 23, 2011, Richardson filed a petition for protection from abuse on behalf of I.G.S. In the petition, Richardson alleged that I.G.S., made comments to her that indicated she was a victim sexual abuse. Allegedly, made these comments approximately three weeks after she visited her father, Smith. Richardson also contends that she witnessed I.G.S. exhibit other “sexualized” behaviors, such as flirting with older men and playing with dolls inappropriately.
A temporary restraining order was issued on March 24, 2011. It listed January 8, 2011, as the date of the alleged sexual molestation. The juvenile court subsequently entered a judgment issuing a protective order on December 6, 2011,[2] granting Richardson permanent sole custody of I.G.S., |2subject to supervised supervision in favor of Smith, consisting of weekly visitation for one day from 9:00 a.m. until 6:00 p.m., while Smith is in the parish. Smith now appeals.
LAW AND DISCUSSION

Sufficiency of the Evidence

Smith appears in this appeal pro se, asserting four assignments of error. In the first assignment of error, Smith asserts that the evidence does not sufficiently prove that he molested his daughter, I.G.S.
The trial court issued the protective order pursuant to the La. Ch. C. arts. 1564, et seq., and La. R.S. 9:361, et seq. La. Ch. C. art. 1569(B) states:
B. If a temporary restraining order is granted without notice, the matter shall be set within twenty-one days for a rule to show cause why the protective order should not be issued, at which time the petitioner must prove the allegations of abuse by a preponderance of the evidence. The defendant shall be given notice of the temporary restraining order and the hearing on the rule to show cause by service of process as required by law. (Emphasis added.)
“Domestic abuse” includes but is not limited to physical or sexual abuse and any offense against the person as defined in Chapter 1, Title 14 of the Louisiana Revised Statutes of 1950, except negligent injury and defamation, committed by one *1147 family member or household member against another. La. Ch. C. art. 1565(1). Proof by a preponderance of the evidence is sufficient when the evidence, taken as a whole, shows that the fact sought to be proved is more probable than not. Wright v. Town of Oil City, 46,247 (La.App. 2 Cir. 5/18/11), 71 So.3d 962; Key v. Insurance Company of North America, 605 So.2d 675 (La.App. 2 Cir.1992).
A trial court’s determination of child custody and domestic abuse is entitled to great weight and will not be disturbed on appeal absent a clear abuse of discretion. Stewart v. Stewart, 30,161 (La.App. 2 Cir. 1/21/98), 705 So.2d 802, writ denied, 98-0748 (La.5/1/98), 718 So.2d 418. The discretion afforded the trial court, however, must be exercised in wholehearted good faith and guided by the statute, not by the court’s private opinion of what the statute ought to be. Where the exercise of discretion is arbitrary and not judicial, and the judgment is unjust, it will be set aside. State ex rel J.B., 35,032 (La.App. 2 Cir. 5/9/01), 794 So.2d 899.
The juvenile court’s findings, based on a live presentation of testimony and a personal observation of the parties involved, are entitled to great weight. Matter of L.M.S., 476 So.2d 934 (La.App. 2 Cir.1985). Pursuant to the proof by a preponderance of the evidence standard, we must determine whether the evidence proved that it was more probable than not that I.G.S. was sexually abused, and that Smith is responsible for the sexual abuse.
In the protective order issued, the juvenile court noted:
This court finds by a preponderance of the evidence that defendant sexually molested his daughter based on the child’s disclosure to her mother, and to the court appointed expert, and based on the child’s cluster of behaviors observed by the mother, the child day care employee, and the court appointed expert, who concluded these behaviors were highly indicative of the child having been sexually molested. The court further finds that the defendant’s denials are not worthy of belief based on the numerous examples of his false testimony in the record. The court further finds the petitioner to be credible based on |4her willingness to allow visitation before the allegations surfaced despite the defendant’s homelessness; and based on the corroboration of her reports from the day care employee and the independent court-appointed expert. The court will consider modifying the order based on defendant’s cooperation with counseling. (Emphasis added.)
Smith asserts that the temporary restraining order states that I.G.S. had a physical examination on February 22, 2011, and that no “vaginal trauma” was discovered. He further asserts that the court-appointed expert’s testimony reveals that the cluster of observed behaviors does not definitively point to sexual molestation. Smith alleges that all of his visitations, including the one that took place on January 8, 2011, were in the presence of other adults.
Richardson testified that she filed a police report on February 2, 2011, after I.G.S. told her, “My daddy says my tee-tee is a finger puppet.” Joshua Bryan Nichols, Keri Richardson’s 22-year-old husband, testified that he has witnessed recent changes in I.G.S., i.e., fussy, wetting the bed, nightmares, and fear of windows. He further testified that one night in February, after I.G.S. received a bath, he instructed her to dry “that” off. He informed her, “[Joshua] doesn’t touch you there.” I.G.S. responded, “My daddy says we do.”
Danielle Billings, who is I.G.S.’s teacher at Noel Methodist Preschool, testified that she observed a change in I.G.S.’s behavior *1148 towards the end of March 2011. Billings stated that I.G.S. became moody, began hitting her friends, and “acting out more than usual.”
Laura McFerrin, who is a licensed clinical social worker, was tendered as an expert witness in the field of child and adolescent mental | ¡¡health with experience in child abuse. McFerrin performed a mental health assessment on I.G.S. McFerrin stated that Richardson informed her that I.G.S. said “her tee-tee is a finger puppet” and “my daddy doesn’t hurt my tee-tee anymore.”[3] Richardson also informed McFerrin that sometime in January 2011, I.G.S. began having explosive temper tantrums and rage episodes. Richardson also stated that I.G.S. was exhibiting aggressive behavior at home and at daycare. Richardson said that I.G.S. was putting things in her mouth, such as food, i.e. popsicles and hot dogs, which she believed was simulating oral sex.
Richardson also showed McFerrin some batteries that I.G.S. had chewed. When McFerrin interviewed I.G.S., she asked her why she chewed the batteries. She told her, “They taste like ice cream and I suck on them.”
During McFerrin’s second session with I.G.S., she conducted an exercise that required her to identify body parts. When she directly asked I.G.S. if anyone had ever touched her “tee-tee,” she nodded. She then asked McFerrin if she knew her dad. Several minutes later, I.G.S. asked again if McFerrin knew her dad, to which McFerrin responded that she did know him. McFerrin noted that I.G.S. seemed “fascinated” by this information.
McFerrin testified that the likelihood that I.G.S. was abused is “very high.” She also stated that Smith “could” be I.G.S.’s abuser, but that I.G.S. “never” identified him as such.
|fiWe observe that I.G.S. never identified Smith as the person touching her inappropriately. According to Richardson and Nichols, I.G.S. clearly referred to Smith when she made the sexual allegations to them. It is uncertain why I.G.S. did not refer to Smith during her sessions with McFerrin. McFerrin noted that I.G.S. seemed “fascinated” when she referred to Smith, not fearful. It is possible that I.G.S. was inquiring about her dad because she had not seen him in months.
In McFerrin’s report, she noted that I.G.S.’s behavior is “highly consistent with other children who are known to have experienced trauma, and more specifically sexual trauma when there is a presence of sexualized behaviors and sexually suggestive/acting out type behaviors.” McFerrin recommended that I.G.S. receive therapy. Again, I.G.S. did not identify Smith as her abuser.
Smith testified that this is the second T.R.O. that Richardson has filed against him. In the first T.R.O., Richardson asserted that Smith was cyberstalking him. It was dismissed.
On January 8, 20011, which is the date that the alleged abuse occurred, Smith testified that visitation took place at Mickey, Katherine, and Bennett Prestridge’s house. He stated that he was never alone with I.G.S. on that day.
Katherine and Bennett Prestridge testified that Smith was never alone with I.G.S., and that they did not witness Smith do anything inappropriate towards I.G.S. Additionally, the Gingerbread House and Child Protection Services did not find any *1149 physical evidence that I.G.S. had been sexually abused.
|7The juvenile court found that Smith’s denials “are not worthy of belief based on the numerous examples of his false testimony in the record.” The false testimony that the juvenile court is referring to is Smith’s denial regarding his marijuana use, in court. When Richardson and Smith submitted to a drug test on June 7, 2001, Smith tested positive for marijuana. However, Smith’s drug use, viewed in regard to the evidence as a whole, does not prove that it is more probable than not that he sexually abused I.G.S.
As addressed above, the juvenile court found by a preponderance of the evidence that Smith sexually molested his daughter. Ironically, he granted Smith supervised visitation, once a week between the hours of 9 a.m. and 6 p.m., while he is in the parish.
We do not dispute the fact that I.G.S. may be a victim of sexual abuse. However, this record does not support a finding under the preponderance of the evidence standard, that Smith sexually abused I.G.S. using the proof by a preponderance of evidence standard.[4] Finding merit in this assignment, we reverse the juvenile court’s judgment granting the protective order against Smith. Based on our decision regarding this assignment, there is no need to address Smith’s remaining assignments of error.
CONCLUSION
lsFor the foregoing reasons, we reverse the juvenile court’s judgment granting the protective order against Smith. Costs of this appeal are assessed to the appellee, Richardson.
REVERSED.

. I.G.S.'s date of birth is August 6, 2007.

. The record cites August 31, 2011, as the final day of court proceedings in this matter. For reasons unknown, the protective order, which discussed the juvenile court’s findings, was issued on December 26, 2011. Although the juvenile court should have rendered a written judgment within 30 days, jurisprudence has established that this issue is not manifestly erroneous. It is logical to conclude that if the judge were certain that Smith had sexually abused I.G.S., he would have ruled sooner.

. Richardson testified that Smith did not try to contact her during the time that he was living in his car. However, the record indicates that Smith did try to contact her so that he may see I.G.S. on several occasions. Smith related that Richardson sent him a text message saying, "You may not see her because you have not paid any child support.”

. Had Richardson filed a petition for domestic abuse assistance pursuant to La. R.S. 9:361, et seq., the lower court would have had to find by clear and convincing evidence that Smith sexually abused I.G.S. Further, the court would have prohibited all visitation and contact between Smith and I.G.S. until, following a contradictory hearing, it found by a preponderance of the evidence that Smith successfully completed a program designed for such sexual abusers, and that supervised visitation is in I.G.S.’s best interests.