Judgment rendered March 9, 2022.
Application for rehearing may be filed
within the delay allowed by Art. 2166,
La. C.C.P.

No. 54,200-CA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

ROSEMARY GREEN                           Plaintiff-Appellant

versus

SAMUEL MYERS                             Defendant-Appellee

* * * * *

Appealed from the
Third Judicial District Court for the
Parish of Lincoln, Louisiana
Trial Court No. 60,378

Honorable Bruce E. Hampton, Judge

* * * * *

CULPEPPER & CARROLL, PLLC              Counsel for Appellant
By:  Teresa Culpepper Carroll

GINA LEIGH JONES

OFFICES OF J. DHU THOMPSON,            Counsel for Appellee
APLC
By:  J. Dhu Thompson

* * * * *

Before PITMAN, COX, and HUNTER, JJ.

**PITMAN, J.**

Petitioner-Appellant Rosemary Green ("Rosemary") appeals the district court's dissolution of a protective order in favor of Defendant-Appellee Samuel Myers ("Corey"). For the following reasons, we affirm.

## FACTS

Corey and Rosemary are the parents of A.M., whose date of birth is October 20, 2011. They divorced, and in 2016, they were granted joint custody of A.M.

On May 3, 2019, Rosemary filed a petition for protection on behalf of A.M. She alleged that in 2017, A.M. told her that Corey tickled her private area. She stated that Corey was under investigation by the Bienville Parish Sheriff's Office for molesting A.M., that the Department of Children and Family Services ("DCFS") suspended his parental rights pending their investigation and that she filed this protective order after DCFS closed its investigation.[1]

On May 3, 2019, the district court issued a temporary restraining order. It found that the allegations constituted a sexual assault. It ordered Corey not to contact A.M. or to come within five miles of her and granted temporary custody of A.M. to Rosemary.

On August 15 and 16, 2019, a hearing was held with a hearing officer. Rosemary testified that she was married to Corey from 2010 to 2016 and that A.M. is their daughter. She was aware of allegations that Corey molested his older daughter, E.M. She stated that she is in communication with E.M.'s mother and that E.M. and A.M. are in communication.

---

[1] On April 12, 2019, DCFS notified Corey that it completed the investigation of his suspected abuse of A.M. and that the findings were inconclusive.

Rosemary testified that in the spring of 2017, A.M. told her that her nose tickled, Rosemary responded that she should scratch it and then A.M. responded, "And sometimes my daddy tickles my coochie." Rosemary was caught off guard because A.M. had never said anything like that before. She took A.M. to school and then called the pediatrician, who instructed her to go to the emergency room. The emergency room staff contacted the Bienville Parish Sheriff's Department, which began an investigation. A.M. met with a forensic interviewer and attended counseling, but did not discuss the alleged molestation, so the investigation was closed.

Rosemary testified that A.M. regularly masturbated, which her pediatrician said was normal behavior for a child who had been molested. A.M.'s behavior at school became defiant, so Rosemary met with a school counselor and told her about the 2017 allegation. The counselor responded that A.M.'s behavior was indicative of a child who had been molested. Rosemary then asked A.M. if she remembered what she said about being tickled, and A.M. responded that Corey tickled her in her private area and she showed how he tickled her. Rosemary called the school counselor about this, and DCFS became involved. She testified that A.M. told her counselor, the forensic interviewer, the detective and the DCFS worker about Corey tickling her private area. After Corey notified her that DCFS completed its investigation, she filed a protective order to prevent him from having access to A.M. and to protect A.M. She testified that she and A.M.'s counselor believed that supervised visitation between A.M. and Corey would harm A.M.

Ben Green testified that he and Rosemary had been married two years, and he had known A.M. for three to four years. He stated that A.M. did not

make any allegations against Corey to him and he did not observe Rosemary encouraging A.M. to make allegations. He noted that since the alleged molestation, A.M. has gotten in trouble at school, been defiant at home and been masturbating. He stated that counseling had been helping A.M.

Detective Sheronda Bell of the Bienville Parish Sheriff's Office testified that in November 2018, she received a phone call from DCFS regarding Corey and A.M. She observed a forensic interview during which eight-year-old A.M. revealed that her father asked her, "What is it that I want?"; A.M. responded, "You want to tickle me in my private area"; and then he touched her vaginal area on the outside of her clothing. That A.M. knew what Corey wanted suggested to Det. Bell that this was something that had happened before. She noted that A.M. told the forensic interviewer that Corey told her to keep the tickling a secret. She also interviewed A.M., and during this interview, A.M. indicated that Corey only touched her once. She noted that during the investigation, A.M.'s statement that Corey touched her did not change, but details of what happened prior to the touching changed. Det. Bell interviewed E.M., who described a similar pattern of behavior by Corey toward her. Det. Bell testified that she did not request an arrest warrant in this case. She stated that the case was presented to a grand jury, and it returned a no true bill.

Corey testified that he did not know why A.M. made up allegations of molestation and stated that her allegations were not true. He noted that he may have touched A.M.'s vaginal area when bathing her and recalled touching her with a washcloth and showing her how to clean herself when she complained of a burning feeling. He stated that he had not seen A.M. since October 2018 and would like to see her; but, because of her tendency

3

to lie, he requested supervised visits. He testified that in 2008, E.M.'s mother made a complaint that he was molesting three-year-old E.M. He was unaware of allegations E.M. made when she was older. He stated that he had not spoken to E.M. since May 2016 because her mother forbid it.

Alvie Myers, Corey's father, testified that he had never seen Corey act inappropriately with A.M. He stated that E.M.'s mother also accused him and his wife of abusing E.M.

Curtis Myers, Corey's brother, testified that he allows his 11-year-old daughter to be around Corey and that he has not restricted their interactions in any way. He stated that he would not allow his children to be around Corey if he believed Corey acted inappropriately toward a child. He stated that he was aware of the allegations made by A.M. and E.M.

Alyssa Myers, Curtis Myers's wife, testified that her family spends time with Corey two or three times a week, that she has never had any concern that Corey molested her daughter and that she had never seen any indication that he molested a child.

Pursuant to La. Ch. C. art. 1564, et seq., the hearing officer granted the protective order. It noted that the evidence indicated that some inappropriate contact occurred. It stated that a review would occur after one year to consider whether visitation between A.M. and Corey would be appropriate. It also requested a report from A.M.'s therapist at the future hearing.

On August 19, 2019, the district court issued a protective order and reiterated the recommendation of the hearing officer.

On August 20, 2019, Corey filed an objection to the recommendation of the hearing officer and a request for judicial review. He argued that the

evidence presented at the hearing was insufficient to warrant the issuance of a protective order and requested a de novo review by the district court.

A hearing before the district court was held on November 2 and 13, 2020. Alexis Young, a licensed clinical social worker, testified that she first came into contact with A.M. in July 2019, when A.M. was seven years old, and met with her on a weekly basis until May 2020. A pediatric nurse practitioner referred A.M. to her for counseling intervention due to A.M.'s behaviors of acting out and frequent masturbation and a concern that A.M. had been molested. She noted that the nature and frequency of A.M.'s masturbation had become excessive to the point that she irritated her vaginal area, which required a prescription for treatment. She testified that with children over the age of six who cannot be deterred from frequent masturbation there is a chance they have been molested. She discussed A.M.'s diagnoses of attention deficit hyperactivity disorder, pica and oppositional defiant disorder. She noted that A.M. was very irritable and had difficulty with redirection, interaction with siblings, impulsivity and boundary setting. She testified that the therapeutic goals of her sessions with A.M. were to improve A.M.'s behavior and to provide education to A.M. and her mother.

Young detailed her sessions with A.M. At a July 2019 session, she asked A.M. if she had ever been touched inappropriately. A.M. told her that she observed her stepbrother ejaculate, but Young noted that this incident occurred after A.M. began acting out. At an August 2019 session, she and A.M. discussed A.M.'s understanding of why she could not visit Corey. A.M. knew Corey was away and that she could not contact him, but A.M. did not mention anything about molestation being the reason. At their next

session, Young disclosed to A.M. that the reason she could not see her father was because he was accused of molesting her. A.M. became detached, withdrawn and wanted to change the subject, which Young described as a typical reaction of someone who has experienced trauma and that it made her more concerned that Corey molested A.M. At a December 2019 session, Young met with A.M. and Rosemary to educate them on the difference between "good touch" and "bad touch" and to explain to A.M. why she could not see her father. She noted that A.M. never told her about any act of molestation by her father, but that A.M.'s response was "like a lightbulb went off" and "she was connecting the dots with what had happened to her." This made Young believe that Corey abused A.M. At a February 2020 session, A.M. told Young that sometimes she thinks about Corey when she plays with her doll and that when she has those thoughts she starts to play with other toys or draws. Young explained that to discontinue a type of play in order to change her thoughts is a typical coping mechanism for victims of sexual abuse and that this reinforced her belief that Corey abused A.M. She stated that over their sessions, A.M. made progress, but did not achieve the goals they set for her treatment.

Young testified that over the course of her treatment of A.M., her opinion never changed that A.M. was the victim of molestation by her father and that A.M.'s behavior was consistent with a child who had been molested by a caregiver. She stated that nothing caused her to doubt A.M.'s credibility. She believed that it was in A.M.'s best interest not to have contact with her father and that there was no way he could be reintegrated into her life without having a detrimental effect on her mental health and long-term recovery.

On cross-examination, Young testified that in her approximately 20 sessions with A.M., A.M. never told her that Corey molested her, but also never said that he did not molest her. She stated that A.M. was honest in all of their sessions.

The district court then questioned nine-year-old A.M. during a *Watermeier* hearing. A.M. explained what it means to tell the truth and a lie. She stated that she has lied to her mother "a lot of times," but knows it is important to tell the truth. She stated that no one talked to her about what the judge might ask her. She named Rosemary as her mother and Ben Green as her father. She stated Corey is not related to her anymore because he "did something bad" to her and her sister, i.e., he tickled them in their private areas. She explained that she did not know that he "did something bad" to E.M. until Rosemary told her. She stated that Corey told her to keep it a secret when he tickled her private area, but that she did tell her mother. A.M. could not remember the last time she saw Corey and said she cannot see him until she is an adult because her mother is scared he might hurt her again.

On November 19, 2020, the district court found that Rosemary did not meet her burden of proof and, therefore, denied the petition for a uniform protective order. It stated that A.M. appeared to be coached with respect to her testimony that Corey touched her inappropriately. It was troubled that Rosemary subjected A.M. to parental alienation and coaching and questioned Rosemary's credibility.

On November 20, 2020, the district court dissolved the protective order issued on August 19, 2019.

On December 17, 2020, Rosemary applied for emergency supervisory writs of the November 19, 2020 ruling. This court granted the writ application and remanded the matter for perfection as a suspensive appeal.

Rosemary appeals.

**DISCUSSION**

In her first assignment of error, Rosemary argues that the district court abused its discretion in dissolving the protective order. In her second assignment of error, she argues that it erred in ignoring the testimony and counseling records of Young. Rosemary contends that the court's erroneous findings of fact and credibility determinations led to a conclusion that she coached A.M. in order to alienate her from her father. She argues that the evidence clearly shows that Corey sexually abused A.M.; and, therefore, the protective order should be reinstated.

Corey argues that Rosemary failed to carry her burden of proof and, therefore, that the district court did not abuse its discretion in dissolving the protective order. He notes that no records were submitted by Rosemary of A.M.'s forensic interview, DCFS's investigations or A.M.'s other counselors and that this is a failure of Rosemary to meet her burden of proof, not an error by the court in its factual determinations. He argues that the district court did not err in its credibility determinations of Rosemary or A.M. or its consideration of Young's testimony.

The district court issued the August 2019 protective order pursuant to the Domestic Abuse Assistance provisions of the Louisiana Children's Code. *See* La. Ch. C. arts. 1564, et seq. The issuance of a protective order under these provisions requires proof of the allegations of abuse by a

8

preponderance of the evidence.  La. Ch. C. art. 1569(B) and (D); *Newton v. Berry*, 44,383 (La. App. 2 Cir. 5/20/09), 15 So. 3d 262.

A trial court's determination of child custody and domestic abuse is entitled to great weight and will not be disturbed on appeal absent a clear abuse of discretion.  *Richardson v. Smith*, 47,347 (La. App. 2 Cir. 5/16/12), 92 So. 3d 1145.  The district court's findings, based on a live presentation of testimony and a personal observation of the parties involved, are entitled to great weight.  *Id.*

The district court did not abuse its discretion when it determined that Rosemary failed to meet her burden of proving by a preponderance of the evidence that Corey sexually abused A.M.  The district court detailed the evidence presented in this case, including the related criminal proceedings.  The Bienville Parish Sheriff's Office investigated the allegations of sexual abuse, and the grand jury returned a no true bill.  Det. Bell testified that she believed "something happened" to A.M., but she "could not say for sure" who did it.  Similarly, DCFS closed its investigation with inconclusive findings and stated that it was not able to rule out abuse or that Corey was responsible for the abuse of A.M.

The district court was in the best position to evaluate the credibility of the witnesses.  The parties stipulated that in lieu of live testimony, the district court would review the transcripts of the testimony presented before the hearing officer.  The district court observed the testimony of Young and A.M. during the *Watermeier* hearing.  In its oral ruling, the district court detailed its credibility determinations.  It found that A.M. appeared to be coached as to her testimony that Corey acted inappropriately with her and E.M.  It was troubled by Rosemary subjecting A.M. to parental alienation

9

and coaching, and these actions caused it to question Rosemary's credibility. The district court did not abuse its discretion when determining that A.M. and Rosemary lacked credibility.

Further, the district court did not ignore Young's testimony and, instead, detailed that testimony in its oral ruling. Notably, although Young testified that A.M.'s behavior was consistent with a child who had been molested by a caregiver and that she believed Corey molested A.M., she admitted that A.M. never told her that Corey molested her.

Although A.M. might be a victim of sexual abuse, the record does not support a finding under the preponderance of the evidence standard that Corey sexually abused her. Therefore, the district court did not abuse its discretion in dissolving the protective order in this case.

Accordingly, these assignments of error lack merit.

## CONCLUSION

For the foregoing reasons, we affirm the district court's dissolution of a protective order in favor of Defendant-Appellee Samuel Myers and against Petitioner-Appellant Rosemary Green. Costs of this appeal are assessed to Petitioner-Appellant Rosemary Green.

**AFFIRMED.**